206 N.J. Super. 408 (1986)
502 A.2d 1185
SHIRLEY DEHN SEALS, ADMINISTRATRIX OF THE ESTATE OF DENNIS W. DEHN, DECEASED AND SHIRLEY DEHN SEALS, ADMINISTRATRIX AND PROSEQUENDUM OF DENNIS W. DEHN, DECEASED, PLAINTIFF-APPELLANT,
v.
THE LANGSTON COMPANY; HARRIS INTERTYPE CORPORATION; THE COMPANY, A SUBSIDIARY OF HARRIS INTERTYPE CORPORATION; THE SAMUEL M. LANGSTON COMPANY; SML CORPORATION; MOLLEN MACHINE COMPANY, INCORPORATED; THE LANGSTON COMPANY, A SUBSIDIARY OF MOLLEN MACHINE COMPANY; JOHN A. DOE COMPANY; JOHN C. DOE COMPANY; REVOLVATOR COMPANY, INC., JOHN E. DOE COMPANY; JOHN F. DOE COMPANY; JOHN G. DOE COMPANY; JOHN H. DOE COMPANY; JOHN I. DOE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1985.
Decided January 13, 1986.
*409 Before Judges FURMAN, COHEN and ASHBEY.
Ronald A. Graziano argued the cause for appellant (Tomar, Parks, Seliger, Simonoff & Adourian, attorneys; Ronald A. Graziano, of counsel, Lisa J. Rodriguez, on the brief).
Francis X. Donnelly argued the cause for respondent The Langston Company (Martin, Crawshaw & Mayfield, attorneys; Burchard V. Martin, of counsel, Francis X. Donnelly, on the brief).
The opinion of the court was delivered by COHEN, J.A.D.
This appeal presents the question whether Louisiana's one-year statute of limitations or New Jersey's two-year statute governs a New Jersey action for damages for injuries and death of a Louisiana resident allegedly caused in Louisiana by a defective machine manufactured in New Jersey by a New Jersey corporation. If it is the former, plaintiff's New Jersey action is time-barred; if the latter, the action may be maintained.
On defendant's motion for summary judgment, the following appeared. Plaintiff's decedent was killed in Louisiana in a job accident involving a machine made in New Jersey by defendant Langston Company, a New Jersey corporation. Plaintiff started suit in Louisiana charging product defect but, as it turned out, it was against a party which had not made the machine. The party moved for judgment on that basis, and it was granted. By the time plaintiff ascertained who the true manufacturer was, Louisiana's one-year statute of limitations barred suit in that state. La. Civ. Code Ann. art. 2315 (West 1979). Plaintiff then started this action within the period permitted by *410 New Jersey's two-year statute. N.J.S.A. 2A:14-2. Defendant Langston moved for summary judgment, and the Law Division granted the motion and dismissed the action. It held that Louisiana's statute applied because its interest in the action outweighed New Jersey's. It said:
The interest, obviously, is in Louisiana. The interest about which the court should be concerned would be the injured party. * * * The right of the plaintiff was time barred by the one year period of limitations in Louisiana.
We agree and therefore affirm.
The traditional choice-of-law rule is that statutes of limitations are procedural and, therefore, the statute of the forum state will be applied, unless the limitation is a condition of the foreign cause of action. O'Keeffe v. Snyder, 83 N.J. 478, 490 (1980). New Jersey discarded that mechanical rule in Heavner v. Uniroyal, Inc., 63 N.J. 130 (1973), a case similar to this one. Heavner was a North Carolina resident. He brought suit in New Jersey against Uniroyal, a New Jersey corporation, for damages he suffered in a North Carolina accident allegedly due to a defective tire he bought in North Carolina. When he commenced suit, it was time-barred in North Carolina but not by our two-year statute of limitations. The Supreme Court held that North Carolina's statute applied. It announced a new test for such cases:
We need go no further now than to say that when the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied, and its limitation period has expired at the time suit is commenced here, New Jersey will hold the suit barred. In essence, we will "borrow" the limitations law of the foreign state. We presently restrict our conclusion to the factual pattern identical with or akin to that in the case before us, for there may well be situations involving significant interests of this state where it would be inequitable or unjust to apply the concept we here espouse. [63 N.J. at 141].
Like Heavner, the present case is one in which the cause of action arose in another state, the parties were all present in or amenable to the foreign jurisdiction, and the foreign state's period of limitations had expired. Here, however, we must determine if New Jersey has no substantial interest in the *411 matter and if the substantive law of Louisiana would be applied. We must make those determinations in the light of a noticeable difference between Heavner and the present case. That difference is that in Heavner New Jersey was not the place of manufacture of the allegedly defective tire. Here, on the other hand, the allegedly defective machine was made in New Jersey.
In Heavner, the injured party was from another state, the accident occurred there, and the allegedly defective product had no connection with New Jersey other than that its multistate manufacturer was incorporated under our laws. It is not hard to see why the Supreme Court held that New Jersey had "no substantial interest in the matter." 63 N.J. at 141. It was merely a disinterested forum with no stake in the outcome from the point of either party or the State's own public policy. See Henry v. Richardson-Merrell, Inc., 508 F.2d 28, 33 (3 Cir.1975).
We must determine whether the fact present here that defendant manufactured the allegedly faulty machine in New Jersey creates an interest sufficient for application of New Jersey's statute of limitations. The analysis is a two-step process, including both an evaluation of the governmental policies evidenced by the laws of the two states, and a weighing of the factual contacts of the parties with each state. Mellk v. Sarahson, 49 N.J. 226 (1967); Rose v. Port of New York Authority, 61 N.J. 129, 139-140 (1972). The analysis must be performed separately with respect to each rule of law sought to be applied in a case, and it is not necessary to apply wholesale the law of one state or another. See Mellk v. Sarahson, 49 N.J. 226 (1967), which applied to an Ohio accident the rules of the road of that state but not its guest statute where the parties were from Connecticut and New Jersey, neither of which had such a statute.
Here, Louisiana plainly has an interest in its residents' rights to compensation damages for injury or death resulting from the torts of others. And yet, Louisiana affords compensation only *412 to its residents who sue within a year. New Jersey has no interest in granting Louisiana residents compensation rights in its courts greater than Louisiana itself provides. See Pine v. Eli Lilly & Co., 201 N.J. Super. 186, 194 (App.Div. 1985); Schum v. Bailey, 578 F.2d 493 (3 Cir.1978).
On the other hand, Louisiana's statute of limitations, by its own terms, protects all defendants in local suits by Louisiana's residents. It does not extend its protection against state suits only to Louisiana defendants or, so far as we know, to justify its protection in terms of local interests. Cf. Pfau v. Trent Aluminum Co., 55 N.J. 511, 516 (1970).
The sole interest New Jersey might have in the matter is in correcting and deterring the marketing of defective products by local manufacturers. That interest was tentatively suggested in Pfau, 55 N.J. at 524, which involved a defendant New Jersey driver in an Iowa accident:
It may well be that in this case, however, New Jersey has an interest. We are not certain that a defendant's domicile lacks an interest in seeing that its domiciliaries are held to the full measure of damages or the standard of care which that state's law provide for. A state should not only be concerned with the protection and self-interest of its citizens.
Pfau dealt with the question of the application of a guest statute, but its state-interests analysis parallels our approach to the present case.
We see no significant New Jersey interest in exposing New Jersey manufacturers to greater jeopardy in our courts than they would face where a cause of action against them arose, or in a disinterested forum provided by another state. Such a course would encourage forum shopping to avoid the statute of limitations of the state where the cause of action arose. It would also encourage overuse of our judicial system, and would require us to treat local manufacturers more rigorously than foreign manufacturers sued in our courts by foreign plaintiffs. We may not have the power to impose our law on a foreign cause of action properly brought here between foreign parties whose only contact here is their use of New Jersey as a *413 disinterested forum. See Henry v. Richardson-Merrell, Inc., 508 F.2d 28, 37, n. 22; Currie & Schreter, "Unconstitutional Discrimination in the Conflict of Laws," 69 Yale L.J. 1323, 1324 (1960). For that reason, if we were to apply rules that favor foreign plaintiffs against local manufacturers, when we could not do so against foreign ones, we would pointlessly discriminate against our own residents.
Louisiana's substantive law governs this action. In Deemer v. Silk City Textile Mach. Co., 193 N.J. Super. 643 (App.Div. 1984), we dealt with the problem of choice of substantive law in a similar context. Like Heavner, Deemer involved a products liability suit by a North Carolina resident for injuries allegedly caused by a defective product. But, like the present case, the product was a machine manufactured in New Jersey. After the accident, the manufacturer's assets were bought by a German corporation with principal American offices in North Carolina. The New Jersey corporation was dissolved. It is unclear from the Deemer opinion whether manufacturing operations continued in New Jersey.
The issue in Deemer was whether North Carolina's restrictive law on liability or New Jersey's more liberal approach governed the action. Applying the governmental interest analysis, the court ruled that North Carolina's law controlled. In its analysis, the court weighed the significance of North Carolina's interest in plaintiff's compensation rights against New Jersey's interest in defect-free product design and manufacture and found North Carolina's interest more significant. It said, 193 N.J. Super. at 651:
Whatever incidental benefits a liability judgment may contribute toward the correction of a defective design or the deterrence of wrongful conduct with respect to the future distribution of a product, the principal aim of a product liability or other personal injury claim is fairly to compensate the injured party.
The court also balanced the respective contacts of the two states with the dispute and found North Carolina's to be of greater weight. 193 N.J. Super. at 652.
Consistent with Deemer, we hold that New Jersey has no significant interest under the Heavner test in deterring and *414 correcting the marketing by local manufacturers of defective machines. New Jersey's contacts with the parties' dispute are only marginally greater than in Deemer and they should have no effect on the outcome.
Since, in these circumstances, we borrow Louisiana's statute of limitations, which bars plaintiff's action, the trial court correctly invoked that statute to grant defendant's motion to dismiss the complaint.
Affirmed.