**William POLLOCK and Catherine, h/w, and Catherine Bauer, Administratrix of the Estate of Harry E. Bauer, Dec'd., Plaintiffs,**

v.

**Richard D. BARRICKMAN and Austino's Lift Trucks Co., Inc., Defendants.**

Civ. A. No. 84–3693.

United States District Court, D. New Jersey.

June 4, 1985.

Benedict A. Casey, Collingswood, N.J., for plaintiffs.

Ralph A. Catalano, Montano, Summers, Mullen, Manuel & Owens, Westmont, N.J., for defendants.

GERRY, District Judge.

This is a diversity automobile accident case. The decedent, Harry Bauer, died in this accident, and his wife, Catherine Bauer, administratrix of his estate, is bringing these wrongful death and survival actions. The question is whether these actions should be governed by Pennsylvania or New Jersey law. The decedent was a citizen of Pennsylvania; the defendant Barrickman, whose car struck the decedent's, is a citizen of New Jersey, as is his employer, co-defendant Austino's Lift Trucks Co., Inc. The accident occurred in New Jersey.

The parties agree that the wrongful death statutes of Pennsylvania and New Jersey are identical, and it therefore makes no difference which statute is applied. The real issue concerns the Survival Acts. The New Jersey courts have construed the New Jersey Act, N.J.S.A. 2A:15–3, to permit damages only for the decedent's pain and suffering between injury and death, as well as for any lost earnings between injury and death. Pennsylvania's Act permits these elements of damages but *also* permits recovery for decedent's prospective lost earning capacity.

█ Predictably, the plaintiff therefore seeks to have Pennsylvania law applied, and defendant seeks to have New Jersey law applied.

As a federal court sitting in diversity, this court must resolve this choice of law question applying the choice of law theory adopted by the New Jersey courts. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

█ New Jersey, of course, has abandoned the old choice of law rule that the site of the accident provides the law of the case. This rule has been supplanted by a governmental interest analysis. Under this approach,

> the court determines first the governmental policies evidenced by the laws of each related jurisdiction and second the factual contacts between the parties and each related jurisdiction. A state is deemed interested only where the application of its law to the facts in issue will foster that state's policy.

*Henry v. Richardson-Merrell, Inc.*, 508 F.2d 28, 32 (3d Cir.1975). Further, under this approach, the laws of different states may apply in the same case to different issues in the case. *White v. Smith*, 398 F.Supp. 130 (D.N.J.1975). Undeniably, in the instant case, for example, New Jersey law will govern any consideration of negligence, based on the rules of the road. *Id.*

In *Foster v. Maldonado*, 315 F.Supp. 1179 (D.N.J.1970), a case involving identical facts to those here—Pennsylvania plaintiff, New Jersey defendant, accident in New Jersey—the court applied the Pennsylvania Survival Act. The *Foster* court believed that the case presented a false conflict. Pennsylvania, the court reasoned, had a strong interest in the administration of its decedents' estates, and New Jersey had no interest in the administration of the estates of non-resident decedents. Thus, the court concluded, Pennsylvania law should apply as Pennsylvania was the only interested jurisdiction.

In *Colley v. Harvey Cedars Marina*, 422 F.Supp. 953 (D.N.J.1976), the court was again faced with these identical facts. The *Colley* court, however, analyzed this case as a true conflict. Against Pennsylvania's interest in compensation to decedents' estates, the court purported to recognize New Jersey's interest, as reflected in its Survival Act, in protecting its resident defendants from large recoveries by estates. Thus, the *Colley* court concluded, each jurisdiction was interested in the application of its law.

A true conflict presents the court with a true dilemma. The *Colley* court understood that there was really no way, in the evaluation of the interests enunciated above, to say that Pennsylvania's interest was stronger than New Jersey's, or *vice versa;* or that Pennsylvania's interest was more valuable and worthy of recognition, or *vice versa.* Brainerd Currie, a leading scholar to whom the court turned for guidance, argued that when faced with such a conflict, the court should simply apply the law of the forum; in this instance, New Jersey law. *Id.*[1]

The *Colley* court adopted the approach of another scholar, D.F. Cavers, who argued that:

> Where the liability laws of the state in which the defendant acted and caused an injury set a lower standard of ... financial protection than do the laws of the home state of the person suffering the injury, the laws of the state of conduct and injury should determine the standard of ... protection applicable to the case.

*Id.* Expounding on this principle, the *Colley* court explained:

> By entering the state ..., the visitor has exposed himself to the risks of the territory and should not expect to subject persons living there to a financial hazard that their law had not created.

*Id.* This makes good sense, we believe, *although only where the state of injury is truly interested in protecting the defendant.*

▪ Upon careful reflection, this court believes that the instant case does *not* present a true conflict, and we will therefore follow *Foster* in applying the Pennsylvania Survival Act. We disagree with the *Colley* court's reading of the intent of the New Jersey Legislature in passing its Survival Act.

At common law, in England and New Jersey, a personal right of action did not survive the death of the injured party and pass to his estate. *Cooper v. Shore Elec-*

*tric,* 63 N.J.L. 558, 44 A. 633 (E & A 1899). This situation was remedied in 1855, when the New Jersey Legislature enacted the predecessor of N.J.S.A. 2A:15–3. Seven years earlier, in 1848, the Legislature passed a wrongful death statute.

The wrongful death act created a new cause of action in order to afford redress to those who were dependent on the decedent. *Kern v. Kogan,* 93 N.J.Super. 459, 226 A.2d 186 (Law Div.1967). The Survival Act merely permitted the estate to recover for the loss that accrued between injury and death. *Id.*

The Survival Act is remedial in nature, *see Cooper, supra,* designed to alleviate what the Legislature considered an unjust result. The *Foster* court stated that the Act was designed principally to benefit creditors of the estate. In any event, this court believes that, when enacting the statute, the Legislature was principally, if not solely, concerned with the plight of the decedent and his estate, not with the defendant tort-feasor.

The common law rule, after all, cannot be considered to have been designed as a *protection* for the defendant, but only to have represented a narrow view of the rights of a decedent and the consequences of death. And the remedial legislation, likewise, cannot seriously be viewed as a reduction in the protection to be afforded a defendant, but must be viewed simply as an extension of the injured party's right of recovery beyond death.

Of course, it may be argued that the interests of the defendant are implicitly recognized, since recovery is limited in New Jersey in a way it is not so limited in Pennsylvania; and that· it must be assumed, therefore, that the New Jersey Legislature balanced interests and decided to weigh that balance to some extent in favor of the decedent's tort-feasor. This court does not accept this argument, however. Rather, we believe that the Legisla-

---

**1.** There is something unsatisfying about this resolution because it means that, had this case been brought in Pennsylvania, and assuming

Pennsylvania also employed an interest analysis approach, then Pennsylvania law would apply.

ture did not consider the tort-feasor at all, but simply decided what elements of damage it was fair to permit the recovery of, in order to make whole the decedent.

Consider, for example, any other cause of action in tort. We start with the idea that damages are designed to make the injured party whole. If, then, the Legislature (or the courts) determine not to permit recovery, for example, for emotional distress absent a demonstrable physical injury (*see Falzone v. Busch*, 45 N.J. 559, 214 A.2d 12 (1965)), or for lost earnings (past or future) absent a demonstration of earning capacity, this determination is not designed to protect the defendant (although it has this effect). Rather, this determination simply recognizes that to permit recovery would do more than make the injured party whole.

So, here too, the Legislature has reached a decision about what damages the estate is fairly entitled to. In this regard, it must be remembered that the 1855 Survival Act was "passed as *supplementary* to the Death Act [of 1848] and to fill the gap left open [by the latter Act]." *Kern, supra,* 226 A.2d at 193 (emphasis added). Having decided to permit next of kin to recovery for loss of future wages, the Legislature did not believe it was fair or necessary to also allow this recovery to the estate, which only recovers for "loss that accrued ... between injury and death." *Id.*

In sum, then, because we do not believe the Survival Act was enacted with resident defendants in mind, but only in the interests of resident decedents, we believe that the facts of this case present a false conflict. Accordingly, we will grant the motion of plaintiffs for the application of Pennsylvania law. The accompanying order will be entered.

## ORDER

AND NOW, this 4th day of June 1985, upon consideration of Plaintiff's Motion to Apply Pennsylvania Wrongful Death & Survival Acts, it is hereby ORDERED and DECREED that the Pennsylvania Wrong-

ful Death & Survival Acts shall be applied to the issue of damages in this action.